**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Richard Dean Hurles,                    )   No. CV-00-0118-PHX-RCB
                                        )
         Petitioner,                    )   DEATH PENALTY CASE
                                        )
vs.                                     )
                                        )
                                        )
Dora B. Schriro, et al.,                )   **ORDER**
                                        )
         Respondents.                   )
                                        )
                                        )
_____)

     Richard Dean Hurles (Petitioner) filed an Amended Petition for Writ of Habeas Corpus alleging that he is imprisoned and sentenced to death in violation of the United States Constitution.  The Petition raises ten claims for relief.  (Dkt. 25, 26.)[1]

## BACKGROUND

     The following events, as set forth by the Arizona Supreme Court, resulted in Petitioner's conviction for first degree murder.

        After serving nearly fifteen years in prison for sexually assaulting two young boys, Richard Dean Hurles was released on parole in June 1992. Following his release, Hurles moved to Buckeye, where some of his family lived.  On the afternoon of November 12, 1992, Hurles went to the Buckeye public library, a small, house-type building in a residential neighborhood.  The only employee in the library at the time was Kay Blanton.  The last patron, other than Hurles, left the library just before 2:40 p.m.  Hurles then locked the front doors to the library and attacked Blanton in the back room.  He stripped off her underwear and pulled her skirt above her waist in an unsuccessful

---

[1]    "Dkt." refers to the documents in this Court's file.

1
2

> attempt to rape her. Using a paring knife found in the back room of the library, Hurles mortally wounded Blanton, stabbing her thirty-seven times and inflicting blunt force trauma by kicking her to such an extent he tore her liver.

3   *State v. Hurles*, 185 Ariz. 199, 201, 914 P.2d 1291, 1293 (1996).

4   Following his direct appeal, Petitioner, through counsel, filed his first petition for

5   post-conviction relief (PCR) in the trial court. (Dkt. 37, Ex. D.) The PCR court summarily

6   denied the petition. (*Id*., Ex. F.) Petitioner then submitted a petition for review, which the

7   Arizona Supreme Court denied. (*Id*., Ex. G; PR Doc. 5.)[2]

8   In 2000, Petitioner commenced these habeas proceedings by filing an initial habeas

9   petition. (Dkt. 1.) Subsequently, he filed an amended petition raising ten claims. (Dkt. 25.)

10  Petitioner then returned to state court and filed a second PCR petition raising ten claims.

11  (Dkt. 72, PCR at 1-128.)[3]  Based upon *Atkins v. Virginia*, 536 U.S. 304 (2002), Petitioner

12  added an eleventh claim, asserting that his mental retardation precluded imposition of the

13  death sentence. (*Id*. at 368-86.)  The PCR court ruled that Petitioner was entitled to

14  discovery and an evidentiary hearing in order to prove his mental retardation claim. (*Id*., ME

15  25-26, 28, 32-46.)  After investigation but prior to the beginning of the hearing, Petitioner

16  withdrew his *Atkins* claim. (*Id*., PCR at 602.)  The PCR court summarily denied the

17  remainder of Petitioner's claims. (*Id*., ME 11-16.)  Petitioner submitted a petition for review

18  to the Arizona Supreme Court; it was denied. (*Id*., PR at 1-1 to 1-400.)

19  While the procedural status of Petitioner's habeas petition was under advisement, the

20  Ninth Circuit Court of Appeals issued *Smith v. Stewart*, 241 F.3d 1191 (9th Cir. 2001), a

21  decision that called into question Arizona's doctrine of procedural default. Due to the

22  practice of bifurcating the briefing of procedural and merits issues then employed by the

23

24
25   [2]   "PR Doc." refers to the Arizona Supreme Court's docket for Petitioner's first PCR proceeding, CR No. 99-0422-PC.

26
27   [3]   Pursuant to this Court's Order, Respondents provided a copy of the state court materials from Petitioner's second PCR proceeding. The state court materials are separately indexed by post-conviction relief (PCR) documents, minute entries (ME), and petition for review (PR) documents.
28

1    District of Arizona in capital habeas cases, this Court, in the interest of judicial economy,

2    deferred ruling on the procedural status of Petitioner's claims pending further review of

3    *Smith*.  (Dkt. 44.)  In June 2002, the United States Supreme Court reversed the Ninth Circuit.

4    *Stewart v. Smith*, 536 U.S. 856 (2002) (per curiam).  Contemporaneously, the Supreme Court

5    decided *Ring v. Arizona*, 536 U.S. 584 (2002), which found Arizona's death penalty

6    sentencing scheme unconstitutional because judges, not juries, determined the existence of

7    the aggravating circumstances necessary to impose a death sentence.  This Court continued

8    to defer its ruling pending a determination as to whether *Ring* applied retroactively to cases

9    on collateral review.  In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court held

10   that *Ring* does not apply retroactively.

11                     **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

12        Petitioner's claims are governed by the Antiterrorism and Effective Death Penalty Act

13   of 1996, 28 U.S.C. § 2254 (AEDPA).  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see also*

14   *Woodford v. Garceau*, 538 U.S. 202, 210 (2003).  The AEDPA requires that a writ of habeas

15   corpus not be granted unless it appears that the petitioner has exhausted all available state

16   court remedies.  28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731

17   (1991); *Rose v. Lundy*, 455 U.S. 509 (1982).   To properly exhaust state remedies, the

18   petitioner must "fairly present" his claims to the state's highest court in a procedurally

19   appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

20        A claim is "fairly presented" if the petitioner has described the operative facts and the

21   federal legal theory on which his claim is based so that the state courts have a fair

22   opportunity to apply controlling legal principles to the facts bearing upon his constitutional

23   claim.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78

24   (1971).[4]  Unless the petitioner clearly alerts the state court that he is alleging a specific

25   federal constitutional violation, the petitioner has not fairly presented the claim.  *See Casey*

26   _____

27        [4]    Resolving whether a petitioner has fairly presented his claim to the state court
     is an intrinsically federal issue to be determined by the federal court. *See Wyldes v. Hundley*,
28   69 F.3d 247, 251 (8th Cir. 1995); *Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994).

1   *v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Lyons v. Crawford*, 232 F.3d 666, 669-

2   70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency

3   of evidence, right to be tried by impartial jury, and ineffective assistance of counsel lacked

4   the specificity and explicitness required to present federal claim); *Shumway v. Payne*, 223

5   F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present

6   federal claim); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity

7   between a claim of state and federal error is insufficient to establish exhaustion.").   A

8   petitioner must make the federal basis of a claim explicit either by citing specific provisions

9   of federal law or federal case law, even if the federal basis of a claim is "self-evident,"

10  *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly

11  analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th

12  Cir. 2003) (en banc).   However, if a petitioner does not label his claim as federal, the mere

13  citation to a state case that engages in both a state and federal constitutional analysis does not

14  suffice to exhaust the federal claim.   *See Fields v. Washington*, 401 F.3d 1018, 1022 (9th

15  Cir.), *cert. denied*, 126 S. Ct. 738 (2005).   If a petitioner's habeas claim includes new factual

16  allegations not presented to the state court, the claim may be considered unexhausted if the

17  new facts "fundamentally alter" the legal claim presented and considered in state court.

18  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

19      A habeas petitioner's claims may be precluded from federal review in either of two

20  ways.   First, a claim may be procedurally defaulted in federal court if it was actually raised

21  in state court but found by that court to be defaulted on state procedural grounds.   *Coleman*,

22  501 U.S. at 729-30.   Second, a claim may be procedurally defaulted if the petitioner failed

23  to present the claim in any forum and "the court to which the petitioner would be required

24  to present his claims in order to meet the exhaustion requirement would now find the claims

25  procedurally barred."   *Coleman*, 501 U.S. at 735 n.1.   This is often referred to as "technical"

26  exhaustion because although the claim was not actually exhausted in state court, the

27  petitioner no longer has an available state remedy.   *See id*. at 732 ("A habeas petitioner who

28  has defaulted his federal claims in state court meets the technical requirements for

1   exhaustion; there are no remedies any longer 'available' to him."); *see also Gray v.*

2   *Netherland*, 518 U.S. 152, 161-62 (1996).

3         Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may

4   seek relief in post-conviction proceedings and raise federal constitutional challenges to their

5   convictions or sentences in state court.  Rule 32.2 provides, in part:

6         a.  Preclusion.  A defendant shall be precluded from relief under this
    rule based upon any ground:

7           . . . .

8         (2)  Finally adjudicated on the merits on appeal or in any previous
    collateral proceeding;

9
10        *(3)  That has been waived at trial, on appeal, or in any previous*
    *collateral proceeding.*

11        b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based
    on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections]

12      is to be raised in a successive or untimely post-conviction relief proceeding,
    the notice of post-conviction relief must set forth the substance of the specific

13      exception and the reasons for not raising the claim in the previous petition or
    in a timely manner.  If the specific exception and meritorious reasons do not

14      appear substantiating the claim and indicating why the claim was not stated in
    the previous petition or in a timely manner, the notice shall be summarily

15      dismissed.

16  Ariz. R. Crim. P. 32.2 (West 2006) (emphasis added).  Thus, pursuant to Rule 32.2,

17  petitioners may not be granted relief on any claim which could have been raised in a prior

18  petition for post-conviction relief.  Only if a claim falls within certain exceptions

19  (subsections (d) through (h) of Rule 32.1), and the petitioner can justify why the claim was

20  omitted from a prior petition or not presented in a timely manner, will the preclusive effect

21  of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(b), 32.4(a).

22        Therefore, in the present case, if there are claims which have not been raised

23  previously in state court, the Court must determine whether Petitioner has state remedies

24  currently available to him pursuant to Rule 32.  *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th

25  Cir. 1998) (stating that the district court must consider whether the claim could be pursued

26  through any presently available state remedy).  If no remedies are currently available,

27  petitioner's claims are "technically" exhausted but procedurally defaulted.  *Coleman*, 501

28  U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court

1   but found defaulted on state procedural grounds, such claims also will be found procedurally
2   defaulted in federal court so long as the state procedural bar was independent of federal law
3   and adequate to warrant preclusion of federal review. *Harris v. Reed*, 489 U.S. 255, 262
4   (1989). A state procedural default is not independent if, for example, it depends upon an
5   antecedent federal constitutional ruling. *See Stewart v. Smith*, 536 U.S. at 860. A state bar
6   is not adequate unless it was firmly established and regularly followed at the time of the
7   purported default. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

8          Because the doctrine of procedural default is based on comity, not jurisdiction, federal
9   courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*,
10  468 U.S. 1, 9 (1984). As a general matter, this Court will not review the merits of
11  procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure
12  to properly exhaust the claim in state court and prejudice from the alleged constitutional
13  violation, or shows that a fundamental miscarriage of justice would result if the claim were
14  not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

15         Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some
16  objective factor external to the defense impeded counsel's efforts to comply with the State's
17  procedural rule." *Id*. at 753. Objective factors which constitute cause include interference
18  by officials which makes compliance with the state's procedural rule impracticable, a
19  showing that the factual or legal basis for a claim was not reasonably available to counsel,
20  and constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488
21  (1986). "Prejudice" is actual harm resulting from the alleged constitutional error or violation.
22  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting
23  from a procedural default, a habeas petitioner bears the burden of showing not merely that
24  the errors at his trial constituted a possibility of prejudice, but that they worked to his actual
25  and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.
26  *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner cannot meet the cause and
27  prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the
28  failure to hear the claims would constitute a "fundamental miscarriage of justice." *Sawyer*

1   *v. Whitley*, 505 U.S. 333 (1992).

2   **DISCUSSION**

3   Respondents concede that Claims 6, 7, and 10 have been partially exhausted.

4   Respondents assert that the remainder of Petitioner's claims are procedurally defaulted.

5   **Claims 1, 3, 4, and 5**

6   Petitioner fairly presented Claims 1, 3, 4, and 5 during his second PCR proceeding.

7   (Dkt. 72, PCR at 10-23, 45-90.)  The PCR court found the claims precluded as waived

8   pursuant to Ariz. R. Crim. P. 32.2(a)(3) because Petitioner could have presented these claims

9   on direct appeal or in an earlier PCR.  (*Id*., ME at 14-15.)  The court's preclusion ruling is

10  an adequate and independent procedural bar.  *See Ortiz*, 149 F.3d at 931-32 (holding that

11  Rule 32.2(a)(3) is an adequate procedural bar); *Smith*, 536 U.S. at 860 (holding that the

12  procedural bar effected by Rule 32.2(a)(3) is independent of federal law).  Because the

13  procedural bar is adequate and independent, federal review of these claims is foreclosed

14  unless Petitioner can demonstrate cause and prejudice or a fundamental miscarriage of

15  justice, as discussed below.

16  **Claim 2**

17  Claim 2 alleges that the trial court erred by failing to recuse itself after it became a

18  party to the proceedings in a special action filed before the Arizona Court of Appeals.  (Dkt.

19  26 at 16.)  Petitioner fairly presented Claim 2 in his second PCR petition; (Dkt. 72, PCR at

20  24-45); the PCR court resolved the claim on the merits (*id.*, ME at 12-14); and Petitioner

21  included the claim in his petition for review to the Arizona Supreme Court.  Therefore, the

22  Court will review Claim 2 on the merits.

23  **Claim 6**

24  Petitioner alleges that he received ineffective assistance of counsel during his direct

25  appeal.  Petitioner contends that appellate counsel should have raised the numerous claims

26  that Petitioner is raising in this habeas petition, specifically Claims 1, 2, 4, 5, 8, and 9.  (Dkt.

27  26 at 90-91.)

28  Respondents concede that Petitioner partially exhausted Claim 6 during his first PCR

proceeding when he argued that appellate counsel failed to raise Claim 5 on direct appeal. (Dkt. 37 at 8-9.) However, Respondents maintain that no other aspects of Claim 6 were exhausted during the first PCR proceeding. (*Id*.) The Court agrees. In his first PCR petition, Petitioner argued only that appellate counsel rendered ineffective assistance by failing to raise Claim 5 – i.e., that the trial court failed to consider the cumulative weight of his mitigation evidence prior to imposing the death penalty. (*See* Dkt. 37, Ex. D at 14-15.)

Petitioner contends that he is entitled to reformulate and add new factual allegations to an exhausted ineffective assistance claim so long as he does not fundamentally alter the legal claim already considered by the state courts. (Dkt. 42 at 84-86.) Thus, Petitioner contends that all ineffective assistance allegations currently raised were exhausted in his first PCR. (*Id*.)

Allegations of ineffective assistance of counsel constitute separate claims, each of which must be exhausted in state court. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) (stating that a petitioner making an ineffective assistance claim must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment). The Ninth Circuit has ruled that a generic ineffective assistance allegation is insufficient to exhaust particular ineffective assistance claims. *See Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (en banc). In *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005), the Ninth Circuit reiterated that a petitioner who presents a particular ineffective assistance claim cannot later add unrelated instances of counsel's ineffectiveness to his claim. In this case, the Court finds that Petitioner is impermissibly attempting to add unrelated instances of ineffective assistance to the ineffective assistance claim he exhausted in his first PCR petition.

In his second PCR petition, Petitioner fairly presented Claim 6, along with all particular allegations of ineffective assistance of appellate counsel. (Dkt. 72, PCR at 91-103.) The PCR court reached the merits of only one aspect of Claim 6, concluding that appellate counsel did not perform ineffectively for failing to raise Claim 2 on direct appeal. (*Id*., ME at 13-14.) Therefore, these two aspects of Claim 6 are entitled to habeas review on

1   the merits – appellate counsel's failure to raise Claims 2 and 5.  Pursuant to Rule 32.2(a)(3),

2   the PCR court precluded as waived all other appellate counsel ineffective assistance claims.

3   (*Id.* at 14-15.)   Because the procedural bar imposed by the trial court is adequate and

4   independent, federal review of the remainder of Claim 6 is foreclosed unless Petitioner can

5   demonstrate cause and prejudice or a fundamental miscarriage of justice.

6       **Claim 7**

7       Petitioner alleges that he received ineffective assistance of counsel at both the guilt

8   and sentencing stages of trial.  (Dkt. 26 at 103-12.)   He contends that counsel failed to

9   adequately investigate and prepare his guilt-stage mental health defense because counsel

10  failed to locate and have a key witness testify.   He also asserts that counsel failed to

11  adequately explain how the mitigation evidence presented at sentencing affected his state of

12  mind at the time of the murder.  Respondents concede that Petitioner partially exhausted

13  Claim 7 in his first PCR petition when he presented the ineffective assistance allegation

14  regarding sentencing counsel. (Dkt. 37 at 9.)  However, Respondents contend that Petitioner

15  did not fairly present his guilt-stage ineffective assistance argument.  (*See id.*)  The Court

16  agrees.  In his first PCR petition, Petitioner only presented his ineffective assistance claim

17  regarding sentencing counsel, arguing that counsel failed to explain how the mitigation

18  evidence offered at sentencing affected his state of mind at the time of the murder.[5]  (*See* Dkt.

19  37, Ex. D at 7-14.)  Therefore, the sentencing-stage ineffective assistance aspect of Claim 7

20  is entitled to habeas review on the merits.

21      In his second PCR petition, Petitioner fairly presented the guilt-stage ineffective

22  assistance aspect of Claim 7.  (Dkt. 72 at 104-113.)  Pursuant to Rule 32.2(a)(3), the PCR

23  court held that the claim was precluded as waived.  (*Id.*, ME at 14-15.)  Because the

24  procedural bar imposed by the trial court is adequate and independent, federal review of the

25

26      [5]     Offering the same justification as presented in Claim 6, Petitioner argues that
27  his guilt-stage ineffective assistance claim was exhausted by presentation of his sentencing-
    stage ineffective assistance claim in his first PCR petition.  (Dkt. 42 at 86.)  The Court rejects
28  this argument for the reasons set forth with respect to Claim 6.

1    guilt-stage ineffective assistance aspect of Claim 7 is foreclosed unless Petitioner can

2    demonstrate cause and prejudice or a fundamental miscarriage of justice.

3        **Claim 8 and 9**

4        In Claim 8, Petitioner contends that the Arizona death penalty statute violates the

5    Eighth Amendment because it fails, as a whole, to narrow the class of defendants subject to

6    the death penalty.  (Dkt. 26 at 114-21.)  In Claim 9, Petitioner specifically contends that

7    Arizona's "catch-all" aggravator – that the homicide was committed in an especially cruel,

8    heinous or depraved manner pursuant to A.R.S. § 13-703(F)(6) – fails to narrow the class of

9    defendants subject to the death penalty.  (Dkt. 26 at 122-28.)  Regardless of exhaustion, these

10   claims are meritless.  *See* 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on

11   the merits).

12       In *Furman v. Georgia*, 408 U.S. 238 (1972), the Supreme Court struck down

13   Georgia's death penalty statute as violative of the Eighth Amendment.  The *Furman* Court

14   held that the death penalty could no longer be constitutionally imposed under sentencing

15   procedures that created a substantial risk that it would be inflicted in an arbitrary and

16   capricious manner.  *Id*. at 313.[6]  The Court subsequently refined these general requirements,

17   holding that a constitutionally valid capital sentencing scheme must "genuinely narrow the

18   class of persons eligible for the death penalty and must reasonably justify the imposition of

19   a more severe sentence on the defendant compared to others found guilty of murder."  *Zant*

20   *v. Stephens*, 462 U.S. 862, 877 (1983).  The Court explained that a death penalty scheme

21   _____

22        [6]      In response, state legislatures (including Arizona's) amended their death
     penalty statutes to address the Constitutional concerns raised by *Furman*.  *See Gregg v.*
23   *Georgia*, 428 U.S. 153, 179-80 (1976); *Proffitt v. Florida*, 428 U.S. 242 (1976); *Jurek v.*
     *Texas*, 428 U.S. 262 (1976).  In *Gregg*, *Proffitt*, and *Jurek*, the Court determined that each
24   of the state death penalty schemes under review adequately narrowed and channeled a
     sentencer's discretion so as to minimize the risk of arbitrary and capricious imposition of the
25   death penalty.  *Id*.  The Court struck down two other state capital sentencing schemes,
     declaring them unconstitutional mandatory death penalty statutes.  *See Woodson v. North*
26   *Carolina*, 428 U.S. 280 (1976); *Roberts v. Louisiana*, 428 U.S. 325 (1976) (concluding that
27   a death penalty statute cannot automatically impose a sentence of death without allowing
     individualized consideration of relevant mitigation before final sentencing decision).
28

- 10 -

1    must provide an "objective, evenhanded and substantively rational way" for determining
2    whether a defendant is eligible for the death penalty.  *Id.*, 462 U.S. at 879.

3         Defining specific "aggravating circumstances" is the accepted "means of genuinely
4    narrowing the class of death-eligible persons and thereby channeling the [sentencing
5    authority's] discretion." *Lowenfield v. Phelps*, 484 U.S. 231,  244 (1988); *see Blystone v.*
6    *Pennsylvania*, 494 U.S. 299, 306-07 (1990) ("The presence of aggravating circumstances
7    serves the purpose of limiting the class of death-eligible defendants, and the Eighth
8    Amendment does not require that these aggravating circumstances be further refined or
9    weighed by [the sentencer].").  Each defined circumstance must meet two requirements.
10   First, "the [aggravating] circumstance may not apply to every defendant convicted of a
11   murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa v.*
12   *California*, 512 U.S. 967, 972 (1994); *see Arave v. Creech*, 507 U.S. 463, 474 (1993).
13   Second, "the aggravating circumstance may not be unconstitutionally vague." *Tuilaepa*, 512
14   U.S. at 972; *see Arave*, 507 U.S. at 473; *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

15        In addition to the requirements for determining eligibility for the death penalty, the
16   Court has imposed a separate requirement for the selection decision, "where the sentencer
17   determines whether a defendant eligible for the death penalty should in fact receive that
18   sentence." *Tuilaepa*, 512 U.S. at 972.  "What is important at the selection stage is an
19   individualized determination on the basis of the character of the individual and the
20   circumstances of the crime." *Zant*, 462 U.S. at 879.  Accordingly, a statute that "provides
21   for categorical narrowing at the definition stage, and for individualized determination and
22   appellate review at the selection stage" will ordinarily satisfy Eighth Amendment and due
23   process concerns, *id.*, so long as a state ensures "that the process is neutral and principled so
24   as to guard against bias or caprice." *Tuilaepa*, 512 U.S. at 973.

25        In order to ensure that the death penalty is not imposed in an arbitrary and capricious
26   manner, Arizona's death penalty scheme allows only certain, statutorily defined, aggravating
27   circumstances to be considered in determining eligibility for the death penalty. A.R.S. § 13-
28   703(F).  Not only does Arizona's sentencing scheme generally narrow the class of death-

1   eligible persons, § 13-703(F)(6) does so specifically.  Petitioner's contentions to the contrary

2   are without merit.  Rulings of the Ninth Circuit and the United States Supreme Court have

3   upheld Arizona's death penalty statute against challenges that particular aggravating factors,

4   including § 13-703(F)(6), do not adequately narrow the sentencer's discretion.  *See Lewis v.*

5   *Jeffers*, 497 U.S. 764, 774-77 (1990); *Walton v. Arizona*, 497 U.S. 639, 652-56 (1990),

6   *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Woratzeck v. Stewart*,

7   97 F.3d 329, 335 (9th Cir. 1996).  The Ninth Circuit has also explicitly rejected the argument

8   that Arizona's death penalty statute is unconstitutional because it "does not properly narrow

9   the class of death penalty recipients."  *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998).

10  Based on the foregoing analysis, Claims 8 and 9 are dismissed as meritless.

11      **Claim 10**

12      In Claim 10, Petitioner alleges that the trial court's admission of hearsay statements

13  by Petitioner's brother, Dale Hurles, accusing Petitioner of an intention to rape Dale's

14  sixteen-year-old daughter, violated Petitioner's constitutional rights under the Fifth,[7] Sixth,

15  and Fourteenth Amendments.  (Dkt. 26 at 129-37.)  Respondents concede that Petitioner

16  partially exhausted Claim 10 on direct appeal to the extent that it is based only on a violation

17  of the Fourteenth Amendment.  (Dkt. 37 at 10.)

18      On direct appeal, Petitioner raised Claim 10, but limited his constitutional argument

19  to the Fourteenth Amendment.  (*See* Dkt. 37, Ex. A at 9-13.)  Petitioner acknowledges that

20  the Sixth Amendment aspect of Claim 10 was not presented on direct appeal but asserts that

21  the Arizona Supreme Court's review for fundamental error exhausted this aspect of the

22

23      [7]     Although Petitioner asserts a Fifth Amendment violation, it is the Fourteenth

24  Amendment, not the Fifth, that protects a person against deprivations of due process by a
    state.  *See* U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life,

25  liberty, or property without due process of law"); *Castillo v. McFadden*, 399 F.3d 993, 1002
    n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving

26  persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations
    without due process by the several States.").  Consequently, the Fifth Amendment Due

27  Process Clause does not provide a cognizable ground for relief from Petitioner's state court

28  conviction.

1    claim.[8]  (Dkt. 42 at 91-93.)

2         The Ninth Circuit has rejected the contention that the Arizona Supreme Court's

3    statutory fundamental error review itself exhausts claims that were not fairly presented to it

4    for purposes of federal habeas review.  *See Poland (Michael) v. Stewart*, 117 F.3d 1094,

5    1105 (9th Cir. 1997) (stating that Arizona's process of fundamental error review does not

6    excuse a petitioner's failure to present federal claims to the state's highest court);

7    *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.1996) (rejecting argument that

8    review for fundamental error by Arizona Supreme Court prevents procedural preclusion from

9    attaching).

10        Petitioner's reliance on *Falcone v. Stewart*, 120 F.3d 1082 (9th Cir. 1997), *vacated*

11   *on other grounds*, 524 U.S. 947 (1998), is misplaced.  *Falcone* provides little, if any,

12   persuasive authority because the discussion of Arizona's fundamental error review is dicta

13   and the entire opinion was vacated by the Supreme Court.  *See* 524 U.S. 947 (1998).  Further,

14   since *Falcone* was decided, the Ninth Circuit has reaffirmed the holdings of *Poland* and

15   *Martinez-Villareal* that the Arizona Supreme Court's statutory fundamental error review does

16   not in itself exhaust un-presented claims for purposes of federal habeas review.  *See Beaty*

17   *v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland (Patrick) v. Stewart*, 169 F.3d 573, 583

18   (9th Cir. 1999).

19        Even if his Sixth Amendment argument remains non-exhausted, Petitioner contends

20   that he has remaining state court remedies and, therefore, this Court should not conclude that

21

22        [8]      Former A.R.S. § 13-4035 required Arizona appellate courts to independently

23   review the record in all criminal cases for fundamental error.  *See* A.R.S. § 13-4035

24   (Repealed by Laws 1995, Ch. 198, § 1).  Effective July 13, 1995, statutory fundamental error

25   review was repealed.  *Id.*  The procedural effect of the repeal applied to cases on appeal that

     were not yet final as of the effective date.  *See State v. Smith*, 184 Ariz. 456, 459, 910 P.2d

26   1, 4 (1996).  Even though the disposition of Petitioner's direct appeal occurred after *Smith*

     was decided, and thus was not subject to fundamental error review, the Arizona Supreme

27   Court expressly indicated that it reviewed Petitioner's case for fundamental error.  *See*

28   *Hurles*, 185 Ariz. at 208, 914 P.2d at 1300.  Thus, this Court must reach the merits of

     Petitioner's argument regarding exhaustion by fundamental error review.

1   this aspect of Claim 10 is technically exhausted and procedurally defaulted. (Dkt. 42 at 91-

2   93.) The Court disagrees.

3        In determining whether Petitioner presently has a remedy available in state court, *see*

4   *Ortiz*, 149 F.3d at 931 (citing *Harris*, 489 U.S. at 269-70 (O'Connor, J., concurring)), this

5   Court must assess the likelihood that a state court will provide him with a hearing on the

6   merits of his claim. *See Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citing

7   *Harris*, 489 U.S. at 268 (O'Connor, J., concurring)). The question is whether "there is some

8   reasonable probability that (state) relief . . . will actually be available." *Matias v. Oshiro*, 683

9   F.2d 318, 320 (9th Cir. 1982).

10       Petitioner contends that the state court will reach the merits of his Sixth Amendment

11  argument because due process violations occurred during the first PCR proceedings which

12  entitle him to a "fresh post-conviction proceeding in which all of his issues can be addressed

13  on the merits." (Dkt. 42 at 92.) Petitioner presented this due process argument in his second

14  PCR petition. (*See* Dkt. 72, PCR at 2-6.) The trial court denied the argument, treated

15  Petitioner's petition as a successive PCR petition, and subjected its claims to the rules of

16  preclusion. (*See id.*, ME at 11-14.)

17       Next, Petitioner argues that "an Arizona court could conclude that Claim 10's Sixth

18  Amendment Confrontation Clause assertion is a right of 'sufficient constitutional magnitude'

19  that Arizona's post-conviction rules of preclusion do not apply." (Dkt. 42 at 92.) This

20  argument is waived because Petitioner chose not to include it when he presented his second

21  PCR petition to the state court. (*See* Dkt. 72, PCR at 10-128.) Finally, he argues that an

22  Arizona court could reach the merits of his Confrontation Clause argument pursuant to its

23  inherent power to reach any claim that constitutes fundamental error. (Dkt. 42 at 92.) This

24  argument is also waived because Petitioner did not to include it in his second PCR petition.

25  (*See* Dkt. 72, PCR at 10-128.)

26       Rules 32.2(b) and 32.4(a) of the Arizona Rules of Criminal Procedure provide that a

27  petitioner may only file a successive, untimely PCR petition based on claims that fall within

28  the exceptions to preclusion set forth in Rule 32.1(d)-(h). Such a petition must set forth

"meritorious reasons" for not raising the claim in an available earlier proceeding.  As already discussed, Petitioner has either waived his arguments or the trial court has already addressed them.  This Court concludes that the Sixth Amendment aspect of Claim 10 does not fall within any of Arizona's exceptions to preclusion and that Petitioner would be unable to show meritorious reasons under Rule 32.2(b) for not arguing the specific federal constitutional basis of Claim 10 in his direct appeal or in his first or second PCR petition.  The Court finds that there is no "reasonable probability that (state) relief . . . will actually be available." *Matias*, 683 F.2d at 320.  Thus, the Sixth Amendment aspect of Claim 10 is technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.  The Fourteenth Amendment aspect of Claim 10 will be reviewed on the merits.

**Cause and Prejudice/Fundamental Miscarriage of Justice**

**Claim 1**

Petitioner alleges that cause exists to overcome the procedural default of Claim 1 because appellate counsel rendered ineffective assistance in failing to raise the claim on direct appeal.  (Dkt. 42 at 69.)

Before an ineffective assistance of appellate counsel claim can constitute "cause" to excuse the procedural default of another claim, the petitioner must first have fairly presented the ineffective assistance claim to the state's highest court as an independent claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray v. Carrier*, 477 U.S. at 489-90 ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance [of counsel] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (same).  Although a procedurally defaulted ineffective assistance of appellate counsel claim cannot excuse the procedural default of another claim, the procedural default of an appellate counsel claim itself may "be excused if the prisoner can satisfy the cause-and prejudice standard with respect to *that*

1   claim." *Edwards*, 529 U.S. at 453 (original emphasis).  Thus, if the cause and prejudice

2   standard with respect to a procedurally defaulted ineffective assistance of appellate counsel

3   claim is satisfied, the ineffective assistance claim may then serve as cause to excuse the

4   procedural default of a separate claim.  *Id.*

5        In his second PCR petition, Petitioner presented the argument that appellate counsel

6   rendered ineffective assistance by failing to raise Claim 1 on direct appeal.  (Dkt. 72 at 91-

7   103.)  The PCR court found the ineffective assistance claim procedurally defaulted pursuant

8   to Ariz. R. Crim. P. 32.2(a)(3).  (*Id.*, ME at 14-15.)  Petitioner has procedurally defaulted the

9   ineffective assistance of appellate counsel claim and has not demonstrated "cause" to excuse

10  its default.  *See Edwards*, 529 U.S. at 453 (a procedurally defaulted ineffective assistance of

11  appellate counsel claim may be excused only "if the prisoner can satisfy the cause-and-

12  prejudice standard with respect to that claim").  Thus, the Court rejects Petitioner's request

13  to treat ineffective assistance of appellate counsel as "cause" to excuse the procedural default

14  of Claim 1.  Absent cause, there is no need to consider prejudice.  *See Thomas v. Lewis*, 945

15  F.2d 1119, 1123 n.10 (9th Cir. 1991).  Petitioner has not argued that a fundamental

16  miscarriage of justice excuses the default.  (Dkt. 42 at 66-67.)  Therefore, Claim 1 is

17  procedurally barred.

18       **Claims 3, 4 and 5**

19       Petitioner presented Claims 3, 4, and 5 in his second PCR petition.  (Dkt. 72 at 45-90.)

20  The court found the claims precluded as waived because Petitioner could have presented

21  them on direct appeal or in an earlier PCR.  (*Id.*, ME at 14-15.)  Petitioner has not argued that

22  either cause and prejudice or a fundamental miscarriage of justice excuses their default.

23  (Dkt. 42 at 73-84.)  Therefore, Claims 3, 4, and 5 are procedurally barred.

24       **Claim 6**

25       In Claim 6, Petitioner exhausted certain ineffective assistance allegations, claiming

26  that appellate counsel failed to raise Claims 2 and 5; the trial court found the rest of the

27  allegations procedurally defaulted.     (*Id.*, ME at 11-15.)     Petitioner has not argued that

28  either cause and prejudice or a fundamental miscarriage of justice excuses the default.  (Dkt.

42 at 84-86.)  Claim 6 will be reviewed on the merits of the argument that appellate counsel failed to raise Claims 2 and 5.  The remainder of the claim is procedurally barred.

**Claim 7**

In Claim 7, Petitioner procedurally defaulted his guilt-stage ineffective assistance claim.  Petitioner has not argued that either cause and prejudice or a fundamental miscarriage of justice excuses the default.  (Dkt. 42 at 86.)  Therefore, Claim 7 will be reviewed on the merits as to Petitioner's ineffective assistance of sentencing counsel claim.  The remainder of the claim is procedurally barred.

**Claim 10**

In Claim 10, Petitioner procedurally defaulted his Sixth Amendment Confrontation Clause claim.  As cause to overcome the procedural default, Petitioner alleges ineffective assistance of appellate counsel in failing to raise this issue on direct appeal.  (Dkt. 42 at 93.) Before an ineffective assistance of appellate counsel claim can constitute "cause" to excuse the procedural default of another claim, the petitioner must have first fairly presented the ineffective assistance claim to the state's highest court as an independent claim.  *See Edwards*, 529 U.S. at 451-53.  Here, Petitioner did not raise this particular ineffective assistance of appellate counsel claim in either his first or second PCR petition.  Therefore, ineffective assistance of appellate counsel cannot constitute cause to overcome the procedurally defaulted Sixth Amendment aspect of Claim 10.  Absent cause there is no need to consider prejudice. *See Thomas*, 945 F.2d at 1123 n.10.  Petitioner has not argued that a fundamental miscarriage of justice excuses the default.  (Dkt. 42 at 93.)  Therefore, the Sixth Amendment aspect of Claim 10 is procedurally barred.

## CONCLUSION

As previously discussed, the Fifth Amendment aspect of Claim 10 is dismissed as not cognizable for habeas relief.  The following claims are dismissed as procedurally barred: Claim 1, 3, 4, 5, 6 (in part), 7 (in part) and 10 (in part).  Claims 8 and 9 are dismissed on the merits.  The remainder of Petitioner's claims will be briefed on the merits.

Accordingly,

1    **IT IS HEREBY ORDERED** that the Fifth Amendment aspect of Claim 10 is
2    **DISMISSED** as non-cognizable for habeas relief.

3    **IT IS FURTHER ORDERED** that Claims 8 and 9 are **DISMISSED WITH**
4    **PREJUDICE** on the merits.

5    **IT IS FURTHER ORDERED** that the following claims or portions thereof are
6    **DISMISSED WITH PREJUDICE** as procedurally barred: Claims 1, 3, 4, and 5; the
7    allegation in Claim 6 that appellate counsel was ineffective in failing to raise Claims 1, 4, 8,
8    and 9; the guilt-stage ineffective assistance allegation of Claim 7; and the Sixth Amendment
9    aspect of Claim 10.

10   **IT IS FURTHER ORDERED** that, no later than **forty-five (45) days** following entry
11   of this Order, Petitioner shall file a Memorandum regarding the merits of the following
12   claims: Claim 2, Claim 6 (ineffective assistance of appellate counsel not to raise Claims 2
13   or 5), Claim 7 (ineffective assistance of sentencing counsel), and the Fourteenth Amendment
14   aspect of Claim 10.   The Merits Memorandum shall specifically identify and apply
15   appropriate AEDPA standards of review *to each claim for relief* and shall not simply restate
16   facts and argument contained in the amended petition.  Petitioner shall also identify in the
17   Merits Memorandum:  (1) each claim for which further evidentiary development is sought;
18   (2) the facts or evidence sought to be discovered, expanded, or presented at an evidentiary
19   hearing; (3) why such evidence was not developed in state court; and (4) why the failure to
20   develop the claim in state court was not the result of lack of diligence, in accordance with the
21   Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 420 (2000).

22   **IT IS FURTHER ORDERED** that no later than **forty-five (45) days** following the
23   filing of Petitioner's Memorandum, Respondents shall file a Response Re: Merits.

24   **IT IS FURTHER ORDERED** that no later than **twenty (20) days** following the
25   filing of Respondents' Response, Petitioner may file a Reply.

26   **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or
27   Respondents file a Motion for Reconsideration of this Order, such motion shall be filed
28   within **fifteen (15) days** of the filing of this Order.  The filing and disposition of such motion

1   does not toll the time for the filing of the merits briefs scheduled under this Order.

2          **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order

3   to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

4          Dated this 21st day of July, 2006.

5

6

7   _____

8   Robert C. Broomfield
    Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28